IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DIONE RODMAN                        :
                                    :
                                    :
    v.                              :    Civil Action No. DKC 18-3757
                                    :
TRACEY D. JEAN-CHARLES, ESQ.,       :
et al.                              :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this action arising from state court foreclosure proceedings are: (1) a motion to dismiss filed by defendants Century 21 Downtown ("Century 21") and Gina Gargeu, (ECF No. 12); (2) a motion to dismiss filed by defendants Shapiro & Brown, LLP ("Shapiro & Brown"), Kristine D. Brown, and John Stephen Burson, (ECF No. 17); (3) a motion to dismiss filed by Defendant Federal National Mortgage Association ("FNMA"), (ECF No. 26); and (4) a motion to dismiss filed by defendant Lenita Neal ("Deputy Sheriff Neal"), (ECF No. 31).[1]  The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, all of the motions to dismiss will be granted.

---

[1] The two other defendants, Tracey Jean-Charles and BP Fisher Law Group, LLP, have not been served.  As the complaint will be dismissed on grounds equally applicable to them, however, the court does not address the failure of service.

**I.   Background**

According to the complaint, (ECF No. 1), on April 16, 2016, Dione Rodman signed an apartment lease with Norman Driver, the purported owner of a property at 1223 North Eden Street, Baltimore, Maryland 21213 (the "Property"). Ms. Rodman was later able to amend the lease to rent the entire Property. Ms. Rodman's lease was to last for two years, with an option for renewal.

Seemingly unbeknownst to Ms. Rodman, FNMA, through its counsel, Shapiro & Brown, had filed for foreclosure on the Property in the Circuit Court for Baltimore City (the "Circuit Court") on December 19, 2014.[2] (ECF No. 17, at 1-2). On April 14, 2016, two days before Ms. Rodman had signed her lease with Mr. Driver, a foreclosure sale was held at which FNMA purchased the Property, and on September 1, 2016, the Circuit Court ratified that sale. (*Id.*).

Ms. Rodman alleges that FNMA, Ms. Brown, Shapiro & Brown, Mr. Brunson, and several other Shapiro & Brown employees "created a

---

[2] The parties disagree about the date of filing of the foreclosure action, (*see* ECF No. 17, at 1 n.1), but this disagreement is immaterial. At some point, Plaintiff became an "Interested Party" in the foreclosure action, opposed the purchaser's motion for judgment awarding possession, filed an emergency motion to stay eviction, and filed an appeal from the adverse rulings. (ECF Nos. 26-4 (circuit court foreclosure docket), 26-5 (civil appeal information sheet), 26-6 (case information, Court of Special Appeals). Plaintiff does not dispute the authenticity of these documents, or refute the assertions that she participated in the state court proceedings. Indeed, she also attached some of the documents. See ECF No. 36-2.

fake Deed of Trust . . . and a fake Promissory Note alleging that Wells Fargo held a mortgage on the Property for a sum of $179,800." (ECF No. 1, at 7). Ms. Rodman alleges that these same defendants submitted false documents to the Circuit Court in order to gain possession of the Property.

According to Plaintiff, on May 18, 2017, defendant Tracey Jean-Charles submitted a motion for possession of the Property to the Circuit Court. Ms. Rodman then contacted Ms. Jean-Charles and Ms. Jean-Charles allegedly informed Ms. Rodman that there had never been an actual mortgage on the property. Ms. Rodman claims that in this conversation she also, "gained an agreement to purchase the Property[.]" (ECF No. 1, at 8). But Ms. Jean-Charles subsequently "withdrew the agreement," sent a crew to change the locks to the Property and, along with Defendants Gargeu and Century 21, posted an advertisement to the real estate website Zillow, offering the Property for sale.

Ms. Rodman claims that during the efforts to sell the Property, she arranged with FNMA to lease the Property until its sale. Despite this, she alleges, she has been locked out of the property 18 times and evicted five times. She further alleges that defendant BP Fisher Law Group, LLP ("BP Fisher") sent an employee to break into the Property in order to photograph it.

According to Ms. Rodman, BP Fisher's break-in was not the only one, and all of the defendants – except Deputy Sheriff Lenita

3

Neal ("Deputy Sheriff Neal") – have hired people to break into the Property and to disturb Ms. Rodman's possession of it. Allegedly, these intrusions have resulted in serious damage to the Property. Ms. Rodman alleges that Ms. Jean-Charles has issued several money orders to Deputy Sheriff Neal in return for Deputy Sheriff Neal agreeing to evict Ms. Rodman. According to the complaint, Ms. Gargeu has instructed Deputy Sheriff Neal over the phone while Deputy Sheriff Neal has carried out evictions.

The most serious of these alleged intrusions, though, occurred in October 2017. Ms. Rodman alleges that FNMA hired someone to break into the Property, but that Ms. Rodman caught him in the act of picking the lock to the Property. A scuffle ensued which ended with the intruder threatening Ms. Rodman with a firearm. Ms. Rodman asked him what he was doing and the intruder allegedly stated that the "bank sent him[.]" Ms. Rodman then began yelling for help, after which the armed man left the Property.

Plaintiff brought this action on December 6, 2018. (ECF No. 1). Her complaint includes 13 counts against nine defendants. As is often the case when a plaintiff sues a large number of people in a multicount complaint, it is not always clear which counts are brought against which Defendants. Based on the complaint itself, and informed by the motion papers, it appears that the claims and relevant defendants are as follow: Count one, "conversion of real property," appears to be brought against all Defendants. Count

two, "trespass to land and improvements" is brought against all Defendants except Deputy Sheriff Neal. Count three, fraud, is brought against Tracey Jean-Charles and all Defendants involved in the foreclosure sale. Count four, "mail fraud," is brought against Shapiro & Brown, Ms. Brown, Mr. Burson, BP Fisher, Ms. Jean-Charles, and Deputy Sheriff Neal. Count five, "wire fraud," is brought against Ms. Jean-Charles. Count six, conspiracy to commit assault with a deadly weapon, is brought against FNMA. Count seven, malicious destruction of property, is brought against FNMA, BP Fisher, and Century 21. Count eight, embezzlement, is brought against Shapiro & Brown, Ms. Brown, FMNA, BP Fisher, Ms. Gargeu, and Century 21. Count nine, "violation of human rights," is seemingly brought against all Defendants. Count ten, "violation of 5th Amendment due process clause," is brought against Ms. Brown and Ms. Jean-Charles. Count eleven, "Violation of 14th amendment due process clause," is brought against Ms. Brown and Ms. Jean-Charles. The twelfth count, "illegal lock-out," is brought against all Defendants. Finally, count thirteen, wrongful evictions, is brought against Deputy Sheriff Neal.

## II. Standards of Review

### A. Federal Question Jurisdiction

Plaintiff invokes this court's jurisdiction on the basis of federal question jurisdiction, 28 U.S.C. § 1331. Generally, whether any of plaintiff's claims "arise under" federal law is

determined by the application of the well-pleaded complaint rule. *Ali v. Giant Food LLC/Stop & Shop Supermarket Co., LLC*, 595 F.Supp.2d 618, 621 (D.Md. 2009). This rule "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Plaintiff arguably alleges claims under certain federal statutes, although none survive under Fed.R.Civ.P.12(b)(1) and (6) as explained below.

**B.     Supplemental Jurisdiction**

Because the court will dismiss all claims over which it has original jurisdiction, pursuant to 28 U.S. § 1367(c), the court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Therefore, only Plaintiff's federal law claims are analyzed under Fed.R.Civ.P. 12(b)(6) below.

**C.     Failure to State a Claim**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*,

6

550 U.S. 544, 555 n.3 (2007). There must be more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268, (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court can consider documents attached to the complaint, referred to in the complaint, or integral to the dispute, if their authenticity is not challenged. *Strickland-Lucas v. Citibank, N.A.,* 256 F.Supp.3d 616, 622-23 (D.Md. 2017) (quoting *Goines v. Valley Community Services Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016)).

In addition to bringing their motions to dismiss under Fed.R.Civ.P. 12(b)(6), all of the Defendants seek dismissal under Fed.R.Civ.P. 12(b)(1). The existence of subject matter jurisdiction is a threshold issue the court must address before considering the merits of the case. *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999). When a defendant challenges subject matter jurisdiction, "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the

7

proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). Moreover, the plaintiff has the burden of proving that subject matter jurisdiction exists. *Id*.

**III. Analysis**

    **A.   Subject Matter Jurisdiction**

The Defendants argue that this court lacks subject matter jurisdiction for a number of reasons. All of the Defendants suggest that this court lacks subject matter jurisdiction to hear Plaintiffs' claims under the *Rooker-Feldman* doctrine. (ECF No. 12, at 11; ECF No. 17, at 19; ECF No. 26-2, at 11; ECF No. 31-1, at 7). Defendants Century 21, Gargeu, and FNMA also claim that Plaintiff lacks standing – and thus that the court lacks subject matter jurisdiction – because there is no justiciable "case" or "controversy." (ECF No. 12, at 9; ECF No. 26-2, at 8). Finally, FNMA also argues that this court is "require[d] to abstain" from exercising jurisdiction over this matter under the *Younger* abstention doctrine. (ECF No. 26-2, at 11).

    **1.   *Rooker-Feldman* Doctrine**

Under the *Rooker–Feldman* doctrine, federal courts lack subject matter jurisdiction to sit in appellate review of judicial determinations made in state courts. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). "[J]urisdiction to review

8

such decisions lies exclusively with superior state courts and, ultimately, the United States Supreme Court." *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997); *see* 28 U.S.C. § 1257(a). Accordingly, *Rooker–Feldman* bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Moreover, *Rooker–Feldman* bars "lower federal courts from considering not only issues raised and decided in the state courts, but also issues that are 'inextricably intertwined' with the issues that were before the state court.'" *Washington v. Wilmore*, 407 F.3d 274, 279 (4th Cir. 2005) (quoting *Feldman*, 460 U.S. at 486); *see Plyler*, 129 F.3d at 731.

> The "inextricably intertwined" prong of the doctrine bars a claim that was not actually decided by the state court but where "success on the federal claim depends upon a determination that the state court wrongly decided the issues before it." *Plyler*, 129 F.3d at 731 (internal quotation marks omitted). Under either the "actually decided" or the "inextricably intertwined" prong, the principle is the same: "[A] party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994).

9

*Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198 (4th Cir. 2000); *see Exxon Mobil*, 544 U.S. at 293-94 (explaining that *Rooker–Feldman* analysis explores not simply whether issue has been litigated in state court, but whether the federal plaintiff seeks to "undo" an unfavorable state court judgment).

"Courts have consistently applied the *Rooker–Feldman* doctrine to dismiss claims requesting federal district court review of a state court's eviction and foreclosure proceedings." *Nott v. Bunson*, No. WMN-09-2613, 2009 WL 3271285, at *2 (D.Md. Oct. 9, 2009) (citing *Poydras v. One West Bank*, No. 9-11435, 2009 WL 1427396 (E.D.Mich. May 20, 2009) (collecting cases)); *see also Ogunsula v. Holder*, No. GJH-15-1297, 2015 WL 3892126, at *3 (D.Md. June 22, 2015) ("With respect to Plaintiff's claim regarding the alleged improper foreclosure on and eviction from her home, her claim is not appropriately brought in this Court.").

Plaintiff has brought suit against Defendants on multiple legal theories, several of which rely on the premise that the underlying foreclosure sale and award of possession were improper. Specifically, Counts I, III, IV, V, VIII, X, XI, XII, and XIII are all rooted in Defendants' alleged misconduct in bringing and pursuing the foreclosure action in the Circuit Court. All of these counts are based on Defendants' allegedly "submit[ing] false documents to the Baltimore City Circuit Court," making various false claims before that court, or taking action to follow through

on the Circuit Court's judgment. (ECF No. 1, at 7-16). Exercising jurisdiction over these counts would require this court to "determine that the [state] court judgment was erroneously entered or [to] take action that would render the [state court] judgment ineffectual." *Smalley v. Shapiro & Burson, LLP*, 526 Fed.App'x 231, 236 (4th Cir. 2013). This is exactly the kind of determination that this court is barred from making under the *Rooker-Feldman* doctrine. *Id*. The remaining counts, while certainly "intertwined with" the Circuit Court action, are nonetheless rooted in the potentially tortious way certain Defendants carried out Rodman's evictions.

Counts dismissed under the *Rooker-Feldman* doctrine, are, again, dismissed ultimately due to a lack of subject matter jurisdiction. A dismissal for a lack of subject matter jurisdiction "must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013). Accordingly, these counts will be dismissed without prejudice.

**2. Standing**

FNMA, Century 21, and Ms. Gargeu all seek dismissal on the ground that Plaintiff has not stated an "actual case or controversy" and therefore lacks standing before this court. FNMA

does not suggest that this lack of standing applies to any particular counts, but rather argues for "the *Complaint* [to be] immediately dismissed without leave to amend." (ECF No. 26-2, at 11). Century 21 and Ms. Gargeu argue the same. (ECF No. 21, at 10-11).

While Plaintiff may have lacked standing to bring certain claims related to the foreclosure sale, Plaintiff *does* have standing to bring those claims not barred by the *Rooker-Feldman* doctrine. In other words, Ms. Rodman has standing to allege that FNMA, Century 21, and Ms. Gargeu are liable for "trespass to land and improvements," "conspiracy to commit assault with a deadly weapon," "malicious destruction of property," and "violation of human rights." These counts are not, as FNMA, Century 21, and Ms. Gargeu argue, "a [sic] collateral attack on the Order granting the right to possession[.]" (ECF No. 26-2, at 11). None of these claims are based on conduct which is "intrinsic to the state proceedings themselves" nor would addressing these claims require this court "to overturn or permit any collateral review of a final, state court judgment." (ECF No. 21, at 10.) Whether Ms. Rodman has stated a claim for these causes of action – and whether the court may or should exercise jurisdiction over these claims – is a separate question.

**B. Failure to State a Claim**

Of the thirteen causes of action Ms. Rodman includes in her complaint, six potentially invoke federal law: Count IV, mail fraud; Count V, wire fraud; Count VIII, embezzlement; Count IX, violation of human rights; Count X, "Violation of 5th Amendment Due Process Clause"; and Count XI, "Violation of 14th Amendment Due Process Clause[.]" Of these six, all but Count IX, entitled "violation of human rights," will be dismissed for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. However, even if this court had subject matter jurisdiction over the counts entitled "Mail Fraud," "Wire Fraud," "Embezzlement," "Violation of 5th Amendment Due Process Clause," and "Violation of 14th Amendment Due Process Clause," Plaintiff has not adequately pleaded these claims.

"[T]he federal mail and wire fraud laws are criminal statutes that do not, by themselves, give rise to a private civil cause of action." *Morganroth & Morganroth v. DeLaurean*, 123 F.3d 374, 386 (6th Cir. 1997). Likewise, embezzlement is a criminal offense under both federal law, *see generally, Mena v. Lynch*, 820 F.3d 114, 118 (4th Cir. 2016), and Maryland state law, Md. Code An., Cim. Law § 7-113.

As for the causes of action alleging violations of Ms. Rodman's due process rights in Counts X and XI, these are properly understood to be 18 U.S.C. § 1983 claims. To state

13

a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and must also show that the alleged deprivation was committed by a person acting under color of state law. *Mauler v. Arlotto*, 777 Fed.Appx. 59, 60 (4th Cir. 2019) (quoting *West v. Atkins,* 487 U.S. 42, 48 (1988)). When addressing whether a private party acted under color of law, a court starts with the presumption that private conduct does not constitute governmental action. "[T]he under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50 (1999) (internal citations omitted). Thus "the party charged with the deprivation must be a person who may fairly be said to be a state actor . . . because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982).

Here, Plaintiff alleges in her constitutional violation claims that:

> Kristine Brown and Tracey Jean-Charles failed to accurately notify Plaintiff of the events taking place in the foreclosure proceedings, such as an auction being scheduled, proper notice of termination of tenancy, collecting tenancy information previous to requesting possession, stealing the mail so Plaintiff would not be informed of foreclosure or requests for information, failing to provide

> Plaintiff with foreclosure documents, initiating four actual evictions without proper paperwork, and changing the locks without consent from the court. Defendants violated the due process clause to illegally deprive Plaintiff of the Property.

(ECF No. 1, at 13-14).

The alleged misuse of judicial procedures will not qualify Defendants as state actors under § 1983. "[A] private party's mere invocation of state legal procedures has not been held by the Supreme Court to constitute 'joint participation' or 'conspiracy' with state officials satisfying the § 1983 requirement of action under color of state law ." *Donlan v. Smith*, 662 F.Supp. 352, 359 (D. Md. 1986); *see also Field Auto City, Inc. v. General Motors Corp.*, 476 F.Supp.2d 545, 555 (E.D.Va. 2007) ("Simply put, the misuse by private litigants of a state statute or rule does not constitute state action for purposes of § 1983.").

Deputy Sheriff Neal is not mentioned in Counts X and XI with regard to due process, but is mentioned in count IX, for so-called violation of human rights. With regard to Sheriff Neal, the complaint alleges in Count IX that:

> Sheriff L. Neal called animal control and tried to remove Rodman's family cat with her kittens. Rodman has been evicted out of her property four times without any proper paperwork. L. Neal attempted to have Rodman arrested for retrieving money and keys from the Property on April 3, 2018. Gargeu instructs the sheriff over the telephone while the sheriff is at the Property. The sheriff instructs the work crew to remove the locks

15

> and change all of them to lock Rodman out.
> The sheriff tried to have the Property boarded
> up on April 9, 2018.

(ECF No. 1, at 12-13). The source of any "human right" is not defined in count IX, nor is the contour of the right. "Violation of human rights," is not a cognizable federal civil cause of action. Plaintiff has framed this cause of action as stemming from a hodgepodge of conduct, all of it overlapping with other claims: specifically, Rodman alleges that "[t]he Defendants have treated Rodman inhuman[,]" through fraud, trespassing, harassment, and numerous evictions. (ECF No. 1, at 12-13). While much of the conduct described in this cause of action meets elements for other claims Plaintiff has brought, there is no catch-all "violation of human rights" cause of action that this court is aware of.

In Plaintiff's opposition to Deputy Sheriff Neal's motion to dismiss, Plaintiff appears to assert that her claim alleges a violation of her Fourth Amendment rights by Deputy Sheriff Neal. (ECF No. 37, at 15-16). Briefs in opposition to a dispositive motion may not be used to amend a complaint or add new claims. *Mylan Laboratories, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)), *aff'd*, 2 F.3d 56 (4th Cir. 1993); *see also Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion

16

briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998). It is not at all obvious that the actions complained of potentially generate a Fourth Amendment issue. Plaintiff cannot relitigate the validity of the court process pursuant to which Deputy Sheriff Neal acted. She does not seem to allege a Fourth Amendment injury in any event. To the extent Ms. Rodman seeks to add a new § 1983 claim against Deputy Sheriff Neal, the court will not consider it.

Unlike the other claims, Count IX will be dismissed with prejudice for failure to state a claim as it relates to all Defendants except Deputy Sheriff Neal. Out of an abundance of caution, in the unlikely event that Plaintiff can assert a valid federal civil rights claim against the deputy sheriff, the dismissal will be without prejudice to allow the filing of a motion for leave to amend within 21 days.

**C. Supplemental Jurisdiction**

Ms. Rodman's three surviving claims, "trespass to land and improvements," "conspiracy to commit assault with a deadly weapon," and "malicious destruction of property," are state law claims over which this court does not have original jurisdiction. Under 28 U.S.C. § 1367(c)(3), "District Courts may decline to exercise supplemental jurisdiction over a claim . . . [where] the district court has dismissed all claims over which it has original jurisdiction[.]" Because Ms. Rodman's remaining claims arise under the laws of the State of Maryland, the court will not

17

exercise supplemental jurisdiction to resolve them.  Furthermore, "[w]hen . . . federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."  *Borzilleri v. Mosby*, 189 F.Supp.3d 551, 563 (D. Md. 2016) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

## IV. Conclusion

For all these reasons, Plaintiff's complaint will be dismissed in its entirety.  A separate order will be entered.

/s/
DEBORAH K. CHASANOW
United States District Judge
